**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CIERRA GETER, | ) | |
| | ) | Civil Action File No. |
| Plaintiff, | ) | 1:20-cv-01148-SCJ-JSA |
| | ) | |
| v. | ) | |
| | ) | |
| SCHNEIDER NATIONAL | ) | |
| CARRIERS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

## I.     <u>INTRODUCTION</u>

Cierra Geter's ("Plaintiff") employment with Schneider ended after Plaintiff could not perform the essential functions of her job, despite Schneider's repeated efforts to accommodate her disability. Beginning in October 2018, Plaintiff took FMLA leave for her own serious health condition. After exhausting her twelve weeks of FMLA leave, Plaintiff could not return to work full-time and requested that Schneider accommodate a part-time schedule for a period of six weeks. Because Plaintiff worked the overnight shift, she frequently worked alone and it was difficult for Schneider to cover her shifts. Nonetheless, Schneider agreed to accommodate Plaintiff. Plaintiff then requested an extension of her part-time schedule for another five weeks, which Schneider again granted. Plaintiff subsequently requested a second extension of her part-time schedule for an additional six weeks and that she be permitted to work from home. Schneider continued to accommodate these requests. Then, in early-April 2019, Plaintiff requested to extend the part-time schedule a third time – this time for another two months with the additional request of working from home. By that point, Plaintiff had worked a part-time schedule for nearly four-and-a-half months and, Schneider determined that it could not continue to eliminate two essential functions of Plaintiff's job – full-time work and work in the office. As a result, Schneider explored several alternatives, including asking

1

Plaintiff if she could work different shifts, but Plaintiff indicated she could not do so. Since Plaintiff could not return to work full-time, Schneider terminated Plaintiff's employment.

Despite Schneider's efforts, Plaintiff claims that Schneider failed to accommodate her disability, discriminated against her due to her disability and race, and retaliated against her for requesting a reasonable accommodation. However, the undisputed evidence shows that Plaintiff could not perform the essential functions of her job, the accommodations she requested were unreasonable, there is no connection between the termination of her employment and any discriminatory or retaliatory animus, and Schneider had a legitimate, non-discriminatory reason for terminating her employment. Indeed, Schneider went above and beyond its obligations under the ADA to accommodate Plaintiff's disability. Consequently, this Court should grant summary judgment in favor of Schneider and dismiss Plaintiff's Complaint in its entirety.

## II.   <u>UNDISPUTED FACTS</u>

### A. Plaintiff's Employment with Schneider

Schneider is a transportation and logistics company that operates as a common and contract motor carrier throughout the United States and Canada. (Torrence Decl. ¶ 3). On July 14, 2014, Schneider hired Plaintiff as a full-time Area Planning

Manager ("APM") for the third shift at its Fairburn, Georgia location. (Geter Dep. 42:14-43:25, Ex. 2). From mid-2018 until the termination of her employment, Plaintiff was scheduled to work on Wednesday, Thursday, Friday, and Sunday from 11:00 p.m. to 10:00 a.m. (Pl's Dep. 72:2-13). During that time period, Plaintiff reported to Team Lead, Travis Torrence. (Pl's Dep. 69:4-9).

### B. Plaintiff's Essential Job Functions

As an APM, Plaintiff's primary job was to provide support for Schneider drivers. (Pl's Dep. 54:3-6, Ex. 4). In so doing, Plaintiff would dispatch drivers with customer loads, assist drivers in gathering their paperwork and load information, take calls and messages from drivers, and resolve any driver issues. (Pl's Dep. 48:21-49:16, 54:7-12). In order to meet the business needs, APMs were expected to work full-time because Schneider needed to ensure it had the resources to sufficiently support drivers and dispatch loads at all hours of the day. (Biskey-Rose Dep. 40:2-11; Torrence Decl. ¶ 6). Because Schneider's drivers work all hours of the day, the Fairburn location was staffed 24-hours a day, seven days a week by full-time employees. (Biskey-Rose Dep. 18-20; Torrence Decl. ¶ 7).

Plaintiff understood that she was expected to work full-time. (Pl's Dep. 40:14-17). Mr. Torrence did not supervise any employees who were permitted to work a part-time schedule. (Torrence Dep. 64:24-65:3). In fact, during the entirety of

Plaintiff's employment, Schneider did not employ any part-time APMs at the Fairburn location. (Pl's Dep. 83:6-10; Kitchens Dep. 28:5-10; Torrence Decl. ¶ 8).

Plaintiff also understood that certain tasks necessary to assist drivers required her physical presence in the office. (Pl's Dep. 63:7-11). For example, Plaintiff needed to be in the office to interact with drivers who came into the office. (Pl's Dep. 60:6-15). Plaintiff admits that she frequently interacted with drivers face-to-face, and that this interaction was necessary to develop relationships with drivers and better assist them. (Pl's Dep. 55:7-14; 56:8-19; 59:1-24, Ex. 4; Torrence Decl. ¶ 9). Plaintiff further understood that Schneider expected her to have face-to-face interactions with drivers and that Schneider deemed that an important function of her job. (Pl's Dep. 59:13-24). APMs also needed to be in the office to assist drivers in locating available tractors, retrieving keys that were located in a secure lock box, and printing off paperwork. (Pl's Dep. 60:6-62:4, Exs. 4, 5; Torrence Decl. ¶ 10). Plaintiff further understood that having the ability to work in a fast-paced, high pressure environment was an essential function of her position. (Pl's Dep. 57:5-16).

Because there were certain essential tasks that needed to be performed in the office, APMs were not regularly permitted to work remotely. (Torrence Decl. ¶ 22). Rather, employees at the Fairburn location were occasionally permitted to work from home for one-off situations. (Biskey-Rose Dep. 32:8-20, Torrence Dep. 55:16-21).

**C. Plaintiff Frequently Worked Alone as an APM on the Third Shift**

The third shift APM role was staffed differently from the first and second shifts. Whereas the first shift was normally staffed with four to five APMs, and the second shift was staffed with two to three APMs, the third shift only had one or two APMs. (Pl's Dep. 100:16-19). As a result, Plaintiff frequently worked alone on the third shift, especially on Sundays. (Pl's Dep. 100:16-23, Torrence Decl. ¶ 5). Additionally, unlike first and second shift APMs, third shift APMs did not have additional team members to assist in answering messages or phone calls, dispatching drivers, or dealing with driver issues. (Pl's Dep. 100:18-101:6).

**D. Plaintiff Takes FMLA Leave**

In October 2018, Plaintiff was diagnosed with post-traumatic stress disorder and panic disorder by Dr. Cassandra Wanzo, Plaintiff's physician. (Pl's Dep. 86:20-22, 87:5-8, 88:17-20). On October 9, 2018, Plaintiff began a leave of absence under the FMLA for her own serious health condition. (Pl's Dep. 121:17-19, Ex. 11). Plaintiff remained out on approved FMLA leave through December 31, 2018[1], and was expected to return to full-time work on January 2, 2019. (Pl's Dep. 125:1-126, Ex. 13). During the time that Plaintiff was out on FMLA leave, Plaintiff's work was

---

[1] Plaintiff exhausted her twelve weeks of FMLA leave entitlement as of December 31, 2018. (Pl's Dep. 126:3-5).

performed by other APMs and Mr. Torrence. (Torrence Dep. 67:20-23). To ensure coverage while Plaintiff was on FMLA leave, Mr. Torrence worked the overnight shift on Sundays, in addition to his regular duties. (Torrence Dep. 67:24-68:1).

### E. Plaintiff's Initial Accommodation Request

Prior to the expiration of her FMLA leave, Plaintiff submitted a return to work form dated December 15, 2018 and completed by Dr. Wanzo. (Pl's Dep. 126:14-25, Ex. 14). Dr. Wanzo stated that Plaintiff could return to work on January 2, 2019, but with the restriction of working three days a week, ten-hour days. (Pl's Dep. 127:13-17, Ex. 14). Dr. Wanzo indicated that Plaintiff could return to work without restrictions on February 14, 2019. (Pl's Dep. Ex. 14). Schneider agreed to accommodate Plaintiff's request. (Pl's Dep. 133:4-23, Ex. 15).

In addition to only being able to work three days a week, Plaintiff was limited in the days that she could work. (Pl's Dep. 134:24-135:22). Specifically, Plaintiff could not work her Sunday shift (11:00 p.m. – 10:00 a.m.) because she needed to attend counseling sessions on Monday mornings. (Pl's Dep. 134:24-135:22). Mr. Torrence agreed to accommodate Plaintiff's request to not work Sundays. (Pl's Dep. 134:24-135:24). Accordingly, when Plaintiff returned to work on January 2, 2019, she worked Wednesdays, Thursdays, and Fridays. (Pl's Dep. 126:6-8, 135:23-136:3). In order to accommodate Plaintiff's restrictions, Mr. Torrence worked

Plaintiff's Sunday overnight shifts, in addition to his regular duties. (Torrence Dep. 51:24-52:9, 52:23-53:1, 67:3-7; Torrence Decl. ¶ 12). Working this additional overnight shift was difficult for Mr. Torrence as he had already been working 50 hours per week. (Torrence Decl. ¶ 4). Plaintiff acknowledged her inability to work on Sundays impacted the third shift and their workload. (Pl's Dep. 137:9-12).

**F. Plaintiff's Accommodation Extensions and Request to Work from Home**

Plaintiff did not return to full-time work on February 14, 2019. (Pl's Dep. 145:18-22). Instead, on January 21, 2019, Plaintiff submitted another note from Dr. Wanzo requesting an extension of Plaintiff's part-time work schedule of ten hours a day, three days per week, until March 20, 2019. (Pl's Dep. 139:9-140:3, Ex. 16). Schneider again agreed to accommodate Plaintiff's request. (Pl's Dep. 176:10-17, Ex. 22). During this time period, Mr. Torrence continued to work Plaintiff's Sunday overnight shift in the office, in addition to his regular duties. (Torrence Decl. ¶¶ 12-13).

Plaintiff, however, did not return to work full-time on March 20, 2019. (Pl's Dep. 150:13-15). Instead, she sought another extension of her part-time work schedule and additional accommodations. (Pl's Dep. 151:23-152:1). Indeed, on March 9, 2019, Dr. Wanzo submitted documentation to Schneider seeking another extension of Plaintiff's part-time work schedule of three days per week, ten hours

per day, until April 30, 2019. (Pl's Dep. 151:23-152:1, Ex. 17). Plaintiff also sought

an additional accommodation of working from home on Thursdays and Fridays, and

anytime she was scheduled to work alone. (Pl's Dep. 154:3-14, Ex. 17).

On March 30, 2019, Dr. Wanzo submitted additional documentation further

extending Plaintiff's restrictions – this time to June 5, 2019. Dr. Wanzo stated that

Plaintiff can only work three days per week, Wednesday, Thursday, and Friday,

working from home two days a week, ten-hour days. (Pl's Dep. 160:18-25, Ex. 19).

### G. Schneider's Efforts to Accommodate Plaintiff

After receiving Plaintiff's third request to extend her part-time schedule – this

time until June 5, 2019 – Mr. Torrence and Ms. Biskey-Rose determined that based

on Schneider's business needs and staffing levels, they could not continue to

accommodate Plaintiff's request to eliminate two essential job functions – full-time

work and working in the office. (Biskey-Rose Dep. 36:14-22; Torrence Decl. ¶¶ 15-

16). Mr. Torrence had been working Plaintiff's Sunday overnight shift for many

months, and he could not continue to absorb Plaintiff's job duties for several more

months. (Torrence Decl. ¶ 16).

Consequently, Schneider explored other potential accommodations for

Plaintiff. On April 2, 2019, Schneider sent Plaintiff a letter requesting that Dr.

Wanzo provide additional information to Schneider by no later than April 8, 2019,

so that it could explore other potential accommodations. (Pl's Dep. 172:9-22, 183:18-186:9; Pl's Dep. Exs. 20, 23). Specifically, Schneider asked Dr. Wanzo if, in addition to working Wednesday, Thursday and Friday, Plaintiff could work another day of the week. (Pl's Dep. Ex. 23). Schneider also asked Dr. Wanzo if she could work a Monday through Friday, eight-hour schedule. (Pl's Dep. Ex. 23). While Plaintiff did not timely respond to Schneider's requests, on April 27, 2019, Dr. Wanzo ultimately stated that Plaintiff could not work any other schedule. (Pl's Dep. Ex. 23).

Ms. Biskey-Rose also asked Plaintiff if she could change her Monday morning counseling session (which prohibited Plaintiff from working her Sunday overnight shift); however, Plaintiff indicated this was not possible as the other available counseling session coincided with another doctor appointment. (Biskey-Rose Dep. 37:8-19). Schneider also considered hiring a temporary employee to cover Plaintiff's Sunday night shift; however, it was not a viable option because the temporary employee would be working the overnight shift by him or herself without the knowledge and background needed to resolve issues that arose. (Biskey-Rose Dep. 40:14-25; Janssen Dep. 40:21-41:18). Finally, Schneider considered reassigning Plaintiff to an open and available position for which she was qualified, but the Fairburn location only had full-time positions. (Torrence Decl. ¶ 17).

After determining that Plaintiff's accommodation requests were not reasonable and that there were no reasonable accommodations that would have enabled Plaintiff to perform the essential functions of her job, Schneider decided to terminate Plaintiff's employment, effective April 12, 2019.[2] (Torrence Decl. ¶ 18).

## III.   ARGUMENT

Plaintiff alleges claims of disability discrimination and retaliation under the ADA and race discrimination under Title VII and Section 1981. Where, as here, Plaintiff has no direct evidence of discrimination or retaliation under the ADA or Title VII, courts apply the burden-shifting framework articulated in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973). Here, the undisputed facts show that Plaintiff cannot establish even a *prima facie* case of disability or race discrimination, or retaliation under the ADA. Moreover, the undisputed facts show that Schneider had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

### A.   Plaintiff's Failure-to-Accommodate Claim Should be Dismissed.

In order to establish the *prima facie* elements of an ADA discrimination claim, Plaintiff must prove that: "(1) [s]he is disabled; (2) [s]he was a 'qualified individual'

---

[2] As of June 5, 2019, Plaintiff still was not able to return to full-time work. (Pl's Dep. 193:9-13). Instead, on June 26, 2019, Dr. Wanzo completed paperwork stating that Plaintiff continued to only be able to work three days per week, ten hour days, until September 23, 2019. (Pl's Dep. 193:19-194:5, Ex. 24).

at the relevant time, meaning [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [s]he was discriminated against because of [her] disability." *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001) (quoting 42 U.S.C. § 12112(a)). The third *prima facie* element has different requirements for a failure-to-accommodate claim compared to a discriminatory discharge claim. *Roberts v. Martin's Rest. Sys., Inc.,* 2006 WL 8432675, at *17 (N.D. Ga. Aug. 3, 2006). In the failure-to-accommodate context, a defendant unlawfully discriminates against a qualified individual with a disability "when the employer fails to provide 'reasonable accommodations' for the disability–unless doing so would impose undue hardship on the employer." *Id.*

### 1. *Plaintiff Was Not a Qualified Individual with a Disability.*

It is well established that an employer is required to provide reasonable accommodations only for individuals who are qualified for the position. 42 U.S.C. § 12112(a). A qualified individual is one with a disability who, "with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). The ADA does not require employers to excuse employees from performing an essential function. *See Williams v. Revco Disc. Drug Centers, Inc.*, 552 F. App'x 919, 922 (11th Cir. 2014). Thus, if Plaintiff cannot perform the

essential functions of her job, then she is not a qualified individual and Schneider has no obligation to provide an accommodation. *See id.*

"Essential functions" are the fundamental job duties of a position that an individual with a disability is actually required to perform. *See* 29 C.F.R. § 1630.2(n)(2)(1). "Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis." *Lucas,* 257 F.3d at 1258; *see also* 29 C.F.R. § 1630.2(n)(3). In conducting this analysis, "[t]he ADA directs courts to consider the employer's judgment as to what functions of a job are essential, such as the employer's written description for the job…[and] the testimony of the plaintiff's supervisor." *Spears v. Creel,* 607 F. App'x 943, 949 (11th Cir. 2015) (internal quotation omitted). Courts in the Eleventh Circuit grant substantial weight to employer's judgment as to which functions are essential. *Agee v. Mercedes-Benz U.S. Int'l, Inc.*, 646 F. App'x 870, 874 (11th Cir. 2016).

It is undisputed that full-time work was an essential function of Plaintiff's job as an APM. Plaintiff admitted that she applied for a full-time position, that Schneider hired her into a full-time position, that Schneider did not employ any part-time APMs, and that Schneider considered full-time work an essential function of Plaintiff's position. (Pl's Dep. 42:8-21; Torrence Decl. ¶¶ 6, 8). Because Plaintiff was not able to perform the essential function of full-time work, she was not a

qualified individual with a disability. *See Webb v. Donley,* 347 F. App'x 443, 446 (11th Cir. 2009) (upholding grant of summary judgment when employer did not provide modified work schedule as full-time presence at the work site was an essential function); *see also Robinson v. Fulton Cnty, Ga.*, 2008 WL 78711, at *22 (N.D. Ga. Jan. 4, 2008) (explaining "[c]ourts have consistently held that the ability to be present on the job and to complete all assigned tasks within a reasonable period of time is essential to any job.").

Working in the office was also an essential function of Plaintiff's third-shift APM position. Plaintiff admitted that there were tasks that she could not perform from home and understood that it was necessary for her to be in the office in order to interact with drivers. (Pl's Dep. 60:6-62:4; 63:7-11). Because Plaintiff needed to work from home at least two days per week (and any time she worked alone), she could not perform the essential functions of the APM position. *See Carlson v. Liberty Mut. Ins. Co.*, 237 F. App'x 446, 448-449 (11th Cir. 2007) (affirming summary judgment because employee was not qualified since she was unable to perform the essential function of at least some presence in the office).

Plaintiff also understood that working in a fast-paced, high pressure environment was a requirement of the APM position. (Pl's Dep. 57:5-16). Plaintiff admitted that she was unable to work well in a fast-paced, high pressure

environment. (Pl's Dep. 187:12-188:5). Because Plaintiff could not meet this essential job requirement, she was not qualified for the APM position. *See Medearis v. CVS Pharmacy,* 92 F.Supp.3d 1294, 1308 (N.D. Ga. 2015) (finding summary judgment was warranted when employee failed to show he was capable of performing the essential functions of his job with or without accommodations and therefore was not a "qualified individual").

### 2. *Plaintiff's Requested Accommodations Were Unreasonable.*

In a failure to accommodate claim, "[t]he plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Bagwell v. Morgan Cnty. Comm'n,* 676 F. App'x 863, 865 (11th Cir. 2017) (unpublished, per curiam) (citation and internal quotations omitted). Here, Plaintiff fails to meet her burden as her requested accommodations of part-time work and working from home were not reasonable.

"The ADA does not require the employer to eliminate an essential function of the plaintiff's job." *Medearis*, 92 F.Supp.3d at 1304 (internal citations and quotations omitted); *Webb,* 347 F. App'x at 446 (stating that "an employer is not required to reallocate job duties to change the functions of the job.") (internal citation omitted). Further, employers are not required to create a part-time position, where none exists. *Rabb v. Sch. Bd. of Orange Cnty., Fla.*, 590 F.App'x 849, 853 (11th Cir.

2014) ("Under this circuit's precedent, a part-time position that does not exist is not a 'reasonable' accommodation because the ADA imposes no duty on the employer to create a part-time position to accommodate an employee's disability.") (citing *Terrell v. USAir*, 132 F.3d 621, 626-27 (11th Cir. 1998)).

i.   Plaintiff's request to work part-time was unreasonable.

Plaintiff's continued requests to work a part-time schedule was not reasonable. Plaintiff's reduced schedule placed an incredible strain on Mr. Torrence who covered Plaintiff's Sunday overnight shift for approximately six months, and by April 2019, Plaintiff indicated that she needed at least another two months of a part-time schedule. (Torrence Decl. ¶ 16). Clearly, it is not reasonable to expect other employees to cover Plaintiff's Sunday overnight shift for such an extended time period. *See Williams v. Cadence Bank,* 2018 WL 7360632, at *6 (N.D. Fl. Oct. 9, 2018) (finding employee's request for a part-time schedule unreasonable because "to accommodate [employee's] proposed part-time schedule, other essential functions of the Branch Manager position would necessarily have been reassigned to existing employees, a result which courts have routinely found to be unreasonable under the ADA."); *see also Higgins v. Union Pacific Railroad Co.*, 931 F.3d 664, 671-72 (8th Cir. 2019) (finding requested accommodation unreasonable when "it

would require [employer] to reassign other [employees] to shifts that they would not have otherwise been scheduled to work.").

Moreover, Plaintiff's multiple requests to extend her part-time schedule amounted to a request for a permanent part-time schedule and elimination of essential job duties. *Campbell v. KBRwyle Tech. Sols., LLC*, 2019 WL 1353965, at *8 (N.D. Ala. Mar. 26, 2019) (finding it "clear that these restrictions were not temporary" when employee exhausted her FMLA leave, was provided a leave extension for four months, granted a request not to work overtime for one month, and sought to not work overtime for an additional two months).[3] Accordingly, Plaintiff's request to continue working a part-time schedule was unreasonable.

      ii.    Plaintiff's request to work from home was unreasonable.

Similarly, Plaintiff's request for a permanent accommodation (of working from home two days per week and any time she was to work alone) was unreasonable. The undisputed evidence shows that several of Plaintiff's job duties needed to be performed in the office – especially on those occasions when Plaintiff was the only APM scheduled for a shift. (Torrence Decl. ¶ 10). Indeed, Plaintiff

---

[3] Further, the fact that Schneider had accommodated Plaintiff's part-time schedule for a period of more than four months does not make Plaintiff's request to further extend her part-time schedule reasonable. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (holding that providing "prior accommodations do not make an accommodation reasonable.").

herself admitted that the one-on-one interaction with drivers could only be performed in the office. (Pl's Dep. 60:6-15). Since Schneider was not required to eliminate any essential functions to accommodate Plaintiff, this request was unreasonable. *See Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 678 (11th Cir. 2015) (affirming summary judgment finding that plaintiff's "physical presence at the front desk was an essential function of her position and her request to work from home (where she would not have been able to perform this essential function of her position), was for no reasonable accommodation.").[4]

       iii.    Plaintiff failed to engage in the interactive process.

Plaintiff's failure to accommodate claim also fails because she caused a breakdown in the interactive process. The undisputed evidence shows that Schneider requested Plaintiff to provide additional medical documentation by April 8, 2019, in support of her accommodation request. Although Plaintiff received the letter, she failed to timely respond. Because Plaintiff did not provide this requested medical documentation in a timely manner, she caused a breakdown in the interactive process

---

[4] Any contention by Plaintiff that other third shift APMs were permitted to work from home on a permanent or consistent basis is specious. Indeed, the undisputed evidence shows that while Schneider permitted APMs to work from home for "one-off" situations (for example, due to illness or to take care of a sick child), there is no evidence in the record that Schneider permitted any APM assigned to the third shift to work from home on a consistent or permanent basis. (Biskey-Rose Dep. 32:8-20, Torrence Dep. 55:16-21)

and her failure to accommodate claim cannot stand. *See Umbarger v. Ga. Dep't of Revenue,* 2007 WL 9700751, at *21 (N.D. Ga. Mar. 30, 2007) (holding "[b]ecause Plaintiff failed to fulfill his obligation to explain the medical necessity of the additional accommodation with supporting medical documentation, his accommodation claim…fails as a matter of law."); *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1288 (11th Cir. 1997) (holding "[l]iability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process.").

## B.  Plaintiff Cannot Establish a *Prima Facie* Disability Discrimination Claim Under the ADA.

Plaintiff also cannot establish that Schneider discriminated against her because of her disability or perceived disability under the ADA. As discussed *supra*, because Plaintiff was not a qualified individual with a disability, she cannot satisfy the second prong of her *prima facie* case and her claim fails for this reason alone. Plaintiff's disability discrimination claim also fails because she cannot show that Schneider treated similarly situated employees outside of her protected class more favorably than she was treated. *Banks v. iGov Techs., Inc.*, 661 F. App'x 638, 644 (11th Cir. 2016) (unpublished, per curiam) (citation omitted); *Lewis v. City of Union*

18

*City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) ("[A] plaintiff asserting an intentional-discrimination claim under *McDonnell-Douglas* must demonstrate that she and her proffered comparators were 'similarly situated in all material respects.'").

Here, Plaintiff's discrimination claim fails because she has not presented any evidence of a similarly-situated employee who was treated more favorably. Plaintiff argues that APM Tiffany Kitchens received preferential treatment because Schneider granted Ms. Kitchens' 2018 request for intermittent FMLA leave to care for her ill mother, yet denied Plaintiff's third extension request to work part-time. (Pl's Dep. 197:6-13, 200:1-20). Ms. Kitchens is not similarly-situated to Plaintiff.

Ms. Kitchens, unlike Plaintiff, requested intermittent FMLA leave. In this respect, Schneider treated Plaintiff <u>the same</u> as it treated Ms. Kitchens. Both employees requested FMLA leave (Plaintiff – for her own serious health condition; Ms. Kitchens – for the serious health condition of her mother). Schneider reviewed their respective requests, and consistent with its obligations under the FMLA, approved both employees' request for leave. (Pl's Dep. 121:20-25, Pl's Dep. 121:7-25, 125:16-126:5, Exs. 11, 13; Kitchens Dep. 15:17-22).

Unlike Ms. Kitchens, though, Plaintiff exhausted her FMLA leave and then requested a part-time schedule as an accommodation under the ADA.[5] The analysis, then, shifts from whether Plaintiff had available FMLA leave to whether Plaintiff's proposed accommodations were reasonable and would enable her to perform the essential functions of her job. Schneider's obligations to Ms. Kitchens under the FMLA and its obligations to Plaintiff under the ADA, therefore, are "wholly distinct" and involve very different considerations. *See* 29 C.F.R. § 825.702(a) (noting that "the leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the ADA.").

Specifically, the FMLA entitles eligible employees, like Ms. Kitchens, to intermittent leave. 29 U.S.C. § 2612(a)(1)(D). Thus, once Ms. Kitchens notified Schneider that she required a reduced schedule via intermittent leave, the FMLA obliged Schneider to grant her request. *See Brown v. Gestamp of Ala. LLC*, 2018 WL 3455687, at *6 (S.D. Ala. 2018). In contrast, "[w]hether an accommodation [under the ADA] is reasonable depends on specific circumstances." *Terrell,* 132 F.3d at 626. For one, the ADA does not require employers to excuse employees from performing an essential function, even though eligible employees are entitled to FMLA leave even if it prevents them from performing essential job duties. 29 C.F.R.

---

[5] Ms. Kitchens never requested a reduced schedule leave under the ADA.

§§ 825.112, 825.123; *Revco,* 552 F. App'x at 922. In other words, the leave provisions of the FMLA and ADA are different and any attempt to treat them as one in the same is like comparing apples to oranges. They are not similar.

Even if it is possible to compare Ms. Kitchen's request for FMLA leave to Plaintiff's request for an accommodation under the ADA, there are several other reasons why Ms. Kitchens is not similarly situated to Plaintiff. First, as an APM on the first shift, Ms. Kitchens reported to a different supervisor and worked a different schedule than Plaintiff. Ms. Kitchens worked Monday through Friday, generally from 7 a.m. to 4 p.m., and always worked with several other APMs and never worked alone. (Kitchens Dep. 8:24-9:5). Therefore, when Ms. Kitchens was not in the office, there were other APMs in the office who could cover for Ms. Kitchens. In contrast, when Plaintiff was not in the office, there typically was no one who could cover for her because she was the only APM working the third shift. These differences further highlight the dissimilarities between Plaintiff and Ms. Kitchens. *See Galdamez v. DHL Air Exp. USA*, 578 F. App'x 887, 892 (11th Cir. 2014) (in gender discrimination case finding comparators not similarly situated because they had different supervisors than plaintiff); *see also Hartwell v. Spencer*, 792 F. App'x 687, 694 (11th Cir. 2019) (in race discrimination case, finding comparator not similarly

situated because he worked a different shift and had a different immediate supervisor in addition to the fact his conduct was less egregious than plaintiff's).

## C.    Plaintiff's Retaliation Claim Should be Dismissed.

Plaintiff contends that Schneider retaliated against her in violation of the ADA by denying her workplace accommodation and terminating her employment. (Compl. at ¶ 64). Plaintiff's retaliation claim cannot stand.

As an initial matter, Plaintiff's retaliation claim should be dismissed because the alleged denial of a reasonable accommodation cannot be the basis of a retaliation claim under the ADA. Courts routinely dismiss retaliation claims that simply repackage claims that an employer failed to offer accommodations. *Lucas,* 257 F.3d at 1255 (rejecting plaintiff's attempt to "reclothe[]" a failure to accommodate claim as a retaliation claim under the ADA); *Perez v. Sprint/United Mgmt. Co.,* 2013 WL 6970898, at *11 (N.D. Ga. Dec. 19, 2013) (same). Because Plaintiff's retaliation claim merely restates her accommodation claim, it should be dismissed.

Even assuming Plaintiff could assert an ADA retaliation claim, she is unable to show a causal connection between requesting an accommodation and the termination of her employment. As discussed *supra*, Schneider made every effort to accommodate Plaintiff's alleged disability. Indeed, Schneider agreed to accommodate Plaintiff's multiple requests for extensions of her part-time schedule

and, all told, accommodated Plaintiff's part-time schedule for more than four months. The fact that Schneider repeatedly granted Plaintiff extensions of her requested accommodations belies any argument that Schneider terminated Plaintiff's employment in retaliation for requesting an accommodation. *See Isaac v. Wal-Mart Stores East, LP*, 2017 WL 6061533, at *6 (S.D. Ala. Dec. 7, 2017).

### D. Plaintiff Cannot Establish a *Prima Facie* Case of Race Discrimination Under Title VII or Section 1981.[6]

Plaintiff argues that Schneider discriminated against her due to her race because it accommodated Ms. Kitchens (who is white) more favorably than Plaintiff (who is black). (Pl's Dep. 216:12-21). Plaintiff, however, cannot establish even a *prima facie* case of race discrimination because, as discussed in Section III(B)(1), *supra*, she cannot show that Ms. Kitchens is similarly situated to Plaintiff. *See Smith v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, 819 F. App'x 774, 777 (11th Cir. 2020) (finding court did not err in granting summary judgment when plaintiff failed to identify similarly situated comparators). Therefore, Plaintiff's race discrimination claim should be dismissed.

---

[6] The elements of a claim of race discrimination under 42 U.S.C. § 1981 are the same as a Title VII claim. *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).

**E.      Schneider Had a Legitimate, Non-Discriminatory Reason To Terminate Plaintiff's Employment That Was Not Pretextual.**

Even if Plaintiff could establish a *prima facie* case, Schneider had a legitimate, non-discriminatory reason for its actions – i.e., Plaintiff could not perform the essential functions of her job. Courts in the Eleventh Circuit have consistently held that the inability of a plaintiff to perform an essential job function is a legitimate, non-discriminatory reason for termination. *See E.E.O.C. v. Eckerd Corp.*, 2012 WL 2568225, at *10 (N.D. Ga. July 2, 2012) (finding employer presented a legitimate reason for terminating plaintiff's employment because she was unable to perform the essential functions of her job).

Because Schneider has presented evidence setting forth its legitimate, nondiscriminatory reason for terminating Plaintiff's employment, the burden shifts to Plaintiff to prove that Schneider's proffered explanation was a pretext for unlawful discrimination. *See Silvestri v. Jupiter Inlet Colony*, 614 F. App'x 983, 984 (11th Cir. 2015) ("[T]o prove that a reason is a pretext for discrimination, the employee must show that the employer's asserted reason is false, and that discrimination was the real reason.").

Here, the only "evidence" Plaintiff has to support her belief that Schneider's actions were pretextual are her conclusory allegations of discrimination. Indeed, Plaintiff claims that she experienced race discrimination because Plaintiff is black

and Ms. Kitchens and the management team are white. (Pl's Dep. 216:12-217:18). This fact alone is not sufficient to establish a race discrimination claim. *See Brooks v. CSX Transp., Inc.*, 555 F. App'x 878, 882 (11th Cir. 2014) (holding that plaintiff could not establish pretext when the only "evidence" plaintiff presented was that the selected candidate was outside plaintiff's protected class); *see also Wilson v. Pepsi Bottling Grp.*, 609 F.Supp.2d 1350, 1368 (N.D. Ga. 2009) ("The fact that the alleged discriminatee's race differs from that of the alleged discriminator is not itself proof of intent to discriminate based on race.").

Finally, the fact that Schneider went above and beyond its legal obligations to accommodate Plaintiff negates any finding of pretext. *See Isaac,* 2017 WL 6061533, at *6 (finding "[t]hese undisputed facts [that employer accommodated employee's disability and went above and beyond its legal obligations] are irreconcilable with any notion of disability discrimination or retaliation, and underscore [plaintiff's] inability to show pretext.").

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should grant Schneider's Motion for Summary Judgment and dismiss all of Plaintiff's claims with prejudice.

Date: June 7, 2021

Respectfully submitted,


By:   /s/ Peter A. Milianti
Peter A. Milianti (admitted *pro hac vice*)
Melissa M. Weiss (admitted *pro hac vice*)
McGuireWoods LLP
77 West Wacker Drive, 41st Floor
Chicago, IL 60601
T: 312-849-8100
F: 312-849-3690
pmilianti@mcguirewoods.com
mweiss@mcguirewoods.com

M. Laughlin Allen, Esq.
Georgia Bar No. 901999
McGuireWoods LLP
1230 Peachtree Street, N.E
Suite 2100, Promenade
Atlanta, GA 30309-3534
T: (404) 443-5738
F: (404) 443-5773
mlallen@mcguirewoods.com

*Counsel for the Defendant*

## <u>CERTIFICATE OF SERVICE AND</u>
## <u>COMPLIANCE WITH LOCAL RULE 5.1B</u>

I certify that on June 7, 2021, I electronically filed the foregoing *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Cheryl B. Legare
cblegare@law-llc.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Respectfully submitted,

By:   /s/ Peter A. Milianti
Peter A. Milianti (admitted *pro hac vice*)
Melissa M. Weiss (admitted *pro hac vice*)
McGuireWoods LLP
77 West Wacker Drive, 41st Floor
Chicago, IL 60601
T: 312-849-8100
F: 312-849-3690
pmilianti@mcguirewoods.com
mweiss@mcguirewoods.com

M. Laughlin Allen, Esq.
Georgia Bar No. 901999
McGuireWoods LLP
1230 Peachtree Street, N.E

Suite 2100, Promenade
Atlanta, GA 30309-3534
T: (404) 443-5738
F: (404) 443-5773
mlallen@mcguirewoods.com

*Counsel for the Defendant*