# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CIERRA GETER, | ) | |
| | ) | Civil Action File No. |
| Plaintiff, | ) | 1:20-cv-01148-SCJ-JSA |
| | ) | |
| v. | ) | |
| | ) | |
| SCHNEIDER NATIONAL | ) | |
| CARRIERS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF TRAVIS TORRENCE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Travis Torrence, depose and state as follows:

1. My name is Travis Torrence. I am over the age of eighteen and am otherwise competent to testify to the facts set forth in this Declaration. All statements contained in this Declaration are true and correct based upon my personal knowledge.

2. I currently serve as Operations Manager for Schneider National Carriers, Inc. ("Schneider").

3. Schneider is a transportation and logistics company that operates as a common and contract motor carrier throughout the United States and Canada.

1

4.     As an Operations Team Leader, I worked five days per week but the days that I worked varied depending upon the needs of the business. I did not have a set work schedule. I typically worked 50 hours per week in my role as Operations Team Leader.

5.     As an APM on the third shift, Ms. Geter frequently worked alone, especially on Sundays.

6.     Full-time work is an essential function of the APM position. During the time period that Schneider employed Ms. Geter, APMs were needed to work full-time so that Schneider could ensure it had the resources to sufficiently support drivers and to dispatch loads at all hours of the day.

7.     During the time period that Schneider employed Ms. Geter, the Fairburn location was only staffed by full-time employees so that Schneider could best meet the needs of its drivers.

8.     Schneider did not employ any part-time APMs at the Fairburn location during the time period Ms. Geter was employed.

9.     During the time period that I supervised Ms. Geter, it was essential for second and third shift APMs to consistently work in the office so that the APMs could develop relationships with drivers and better assist them.

10. It was also necessary for APMs to work in the office so they could retrieve keys for drivers that were located in a secure lock box as well as print off paperwork for drivers. This was especially important on the third shift, when APMs often worked alone.

11. Because there were certain essential tasks that needed to be completed in the office, APMs under my supervision were not regularly permitted to work remotely.

12. In order to accommodate Ms. Geter's restriction of part-time work, I worked Ms. Geter's Sunday overnight shift, in addition to my regular duties. I typically started working the overnight shift at 11 p.m. on Sunday and ended at approximately 7 a.m. on Monday. I would then come back to work on Monday at approximately 1 p.m. and work to 9 p.m. to perform my regular duties as an Operations Team Leader.

13. I consistently covered Ms. Geter's Sunday overnight shift from when she went out on FMLA leave in October 2018, until the termination of her employment in mid-April 2019.

14. During the time period I covered Ms. Geter's Sunday overnight shift, I worked on average 55-60 hours a week.

15. In early April 2019, after considering Ms. Geter's third request to extend her part-time schedule for another two months as well as her request to work from home two days per week or any time she was to work alone, Marianne Biskey-Rose and I determined that we could no longer accommodate Ms. Geter's requests.

16. By April 12, 2019, I had been working Ms. Geter's Sunday overnight shift for approximately six months and I could no longer absorb Ms. Geter's job duties for an additional two months, if not longer. Working the additional Sunday overnight shift was physically exhausting, negatively impacted my ability to complete my Operations Team Leader tasks, and negatively impacted my health.

17. Ms. Biskey-Rose and I discussed the possibility of reassigning Ms. Geter to an open and available position, but the Fairburn location only had full-time positions.

18. Because Ms. Geter's requests were not reasonable and there were no reasonable accommodations that would have enabled Ms. Geter to perform the essential functions of her position, Ms. Biskey-Rose and I decided to terminate Ms. Geter's employment effective April 12, 2019.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 7th, 2021.

_____

Travis Torrence