**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CIERRA GETER, | ) | |
| | ) | Civil Action File No. |
| Plaintiff, | ) | 1:20-cv-01148-SCJ-JSA |
| | ) | |
| v. | ) | |
| | ) | |
| SCHNEIDER NATIONAL | ) | |
| CARRIERS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Nothing Plaintiff raises in her Response brief entitles her to a trial on her claims. After Plaintiff exhausted her twelve weeks of continuous FMLA leave, Schneider accommodated Plaintiff for an additional four-and-a-half months by permitting her to work a part-time schedule. After Plaintiff sought to extend her part-time schedule for another two months, and requested to permanently work from home two days per week and any time she worked alone, Schneider denied her requests because full-time work and working in the office were essential functions of her position. Schneider attempted to engage in the interactive process with Plaintiff to explore other potential accommodations, but she did not timely provide requested medical documentation thereby causing a breakdown in the process.

Plaintiff attempts to manufacture disputed facts regarding the APM position by substituting her own judgment for that of Schneider's, misrepresenting testimony, proffering inadmissible evidence, and improperly disputing uncontested facts. But none of Plaintiff's arguments create a genuine issue of material fact regarding the essential functions of the APM position.  Since it is undisputed that Plaintiff could not perform two *essential* job duties, Plaintiff is not a qualified individual with a disability and her failure to accommodate claim fails as a matter of law.

Plaintiff's retaliation claim also fails as she completely ignores binding precedent holding that a failure to accommodate claim repackaged as an ADA

1

retaliation claim - which is precisely what Plaintiff did here - cannot stand as a matter of law. In any event, Plaintiff does not any advance any pretext arguments to dispute Schneider's legitimate, non-retaliatory reason for terminating Plaintiff.

Finally, Plaintiff's disability and race discrimination claims fail because she cannot point to any similarly situated individual who was permitted to work a part-time schedule for six months and/or permanently work from home at least two days per week. Additionally, Plaintiff has not advanced any pretext arguments to dispute Schneider's legitimate, non-discriminatory reasons for terminating her employment.

## I.    Plaintiff's Failure to Accommodate Claim Should be Dismissed.

### A. It is Undisputed that Plaintiff Was Not A Qualified Individual Because She Could Not Perform the Essential Function of Working Full-Time.

Plaintiff has not identified any material issue of fact as to whether full-time work is an essential function of the APM position. As Plaintiff acknowledges, Schneider's "judgment as to which functions are essential is entitled to substantial weight." *See Agee v. Mercedes-Benz U.S. Int'l, Inc.*, 646 F. App'x 870, 874 (11th Cir. 2016). It is undisputed that the Fairburn location operates 24 hours a day, 7 days a week and that Schneider needed the APM position (the job Plaintiff held) to be staffed full-time to ensure that it had the resources to sufficiently support its drivers and dispatch loads at all hours of the day. (Dkt. 46-5, 40:2-11; Dkt. 46-3, ¶ 6).

In addition to Schneider's judgment, courts also look at the work experience

of past incumbents in the job and the work experience of incumbents in similar jobs to determine which functions are essential. *See Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1306 (11th Cir. 2000). Here, other APMs testified that they never worked a part-time schedule and they could not identify any APMs who worked a part-time schedule. (Dkt. 47-4, 18:12-16, 21:15-17; Dkt. 47-5, 28:5-25; Dkt. 50-1, ¶¶ 27, 87). It is also undisputed that during Plaintiff's five years of employment, Schneider did not employ any part-time APMs in Fairburn and Torrence did not have any direct reports that worked part-time. (Dkt. 46-2, ¶¶ 14, 15).

Plaintiff's argument that full-time work is not essential because the phrase "full-time position" is not explicitly referenced in the APM job description is disingenuous. The job description expressly states that it is an "Exempt (Salaried)" position, which indicates the position is full time. (Dkt. 46-4, Ex. 4).[1] In any event, Plaintiff admitted that she understood she was interviewing for a full-time position, received an offer letter indicating the APM position was full-time, and cannot point to any APM during her five years of employment (other than herself) who worked a part-time schedule.  (Dkt. 46-4, Ex. 2; Dkt. 50-1, ¶¶ 3, 13, 15)

Plaintiff also argues that full-time work is not essential because Schneider has

[1] Even if an essential function is not listed in a job description, it is not dispositive. *See Davis,* 205 F.3d at 1306 (finding overtime to be an essential job function despite it not being in the job description).

a Flexible Work Arrangement (FWA) policy. (Dkt. 50, p. 7-8). This argument is non-sensical. The fact that Schneider has a company-wide FWA policy is not at all relevant to whether full-time work is an essential function of the APM position. Indeed, the policy expressly states that "[e]ach [flexible] arrangement will be evaluated on its own merits taking into account the needs of the business and associate on a case-by-case basis." Moreover, there is no evidence that Schneider approved any APM's request to work a part-time schedule pursuant to the policy. The mere fact that the policy exists and that any Schneider employee, in any position, is entitled to *apply for* a FWA in no way suggests that full-time work is not an essential function of the APM position.

The undisputed evidence establishes that full-time work was an essential function of Plaintiff's job. Because Plaintiff could not work full-time, she was not a qualified individual with a disability. *See Jerome v. Barcelo Crestline, Inc.*, 2009 WL 10657334, at *4 (N.D. Ga. June 17, 2009) (finding plaintiff was not qualified under the ADA when he was unable to return to his position full-time).

**B. Plaintiff's Request to Work Part-Time Was Unreasonable.**

Plaintiff's request to work a part-time schedule for more than six months was unreasonable. As explained above, full-time work was an essential function of the APM position and Schneider was not obligated to eliminate an essential function or

4

create a part-time APM position. *See Terrell v. USAir,* 132 F.3d 621, 626 (11th Cir. 1998) (holding that defendant was not required to *create* a part-time position).[2]

Plaintiff argues that part-time work was reasonable because Torrence only "sporadically" covered Plaintiff's Sunday overnight shift, and that APMs Williams and Seymour "primarily" covered Plaintiff's Sunday shift (Dkt. 50, p. 12). Plaintiff's argument misses the mark. First, Plaintiff lacks personal knowledge of who was covering her Sunday shift as she was not present. Accordingly, her testimony is inadmissible. *See Tishcon Corp. v. Soundview Commn's, Inc.*, 2005 WL 6038743, at *5 (N.D. Ga. Feb. 15, 2005) ("[O]n summary judgment, the Court does not accept testimony that is not based on personal knowledge."). Williams similarly lacks personal knowledge of whether Torrence covered Plaintiff's Sunday overnight because she claims that she "regularly" worked remotely "throughout the later part of [her] pregnancy" and went out on maternity leave on February 26, 2019 – the very time period that Torrence covered Plaintiff's shift. (Dkt. 50-4, ¶ 10). Since Williams

---

[2] Moreover, Plaintiff's three requests to extend her part-time schedule amounted to a request for a permanent part-time schedule. *Campbell v. KBRwyle Tech. Sols., LLC*, 2019 WL 1353965, at *8 (N.D. Ala. Mar. 26, 2019) (finding accommodation requests unreasonable where it was "clear that these restrictions were not temporary" when employee exhausted her FMLA leave, was provided a leave extension for four months, granted a request not to work overtime for one month, and sought to not work overtime for an additional two months).

"regularly" worked remotely and was out on pregnancy leave for more than six of the weeks that Torrence covered Plaintiff's shift (from February 26, 2019 – April 12, 2019), she too lacks personal knowledge of Torrence's work schedule and her statements are inadmissible. *See Tishcon,* 2005 WL 6038743 at *5.

In any event, it is immaterial who covered Plaintiff's Sunday overnight shift. The fact that any employee – whether it was Torrence, Williams, or other APMs – had to cover Plaintiff's shift for more than six months establishes that Plaintiff's part-time accommodation request was unreasonable. Indeed, Schneider is not required to reallocate Plaintiff's job duties to other employees or hire additional employees. *Spears v. Creel,* 607 F. App'x 943, 948-49 (11th Cir. 2015) ("[T]he ADA does not require an employer to reallocate job duties in order to change the essential functions of a job."); *Medearis v. CVS Pharmacy,* 92 F.Supp.3d 1294, 1304 (N.D. Ga. 2015) ("As a matter of law, an employer is not required…to hire another employee to perform essential functions of the ADA plaintiff's job.").

Plaintiff also argues that part-time work is reasonable because Torrence allegedly worked a part-time schedule in 2018. (Dkt. 50, p. 8). Plaintiff's argument is baseless as she has not proffered any admissible evidence to dispute Torrence's testimony that he worked an average of 55-60 hours a week during the time period

that he covered for Plaintiff. (Dkt. 50-1, ¶ 50).[3] While Plaintiff and Williams contend that "Torrence took at least 82 days off in 2018" (Dkt. 50-3, ¶ 10; Dkt. 50-4, ¶ 6), both lack personal knowledge of Torrence's work schedule. Plaintiff and Williams worked the third shift; however, they admit that Torrence regularly covered the second shift. (Dkt. 50-3, ¶ 9; Dkt. 50-4, ¶ 5). As such, they lack any personal knowledge regarding the time Torrence spent working on the second shift. Additionally, Plaintiff was out on medical leave for the last three months of 2018 (Dkt. 50-1, ¶¶ 33, 48) and, therefore, could not have any personal knowledge of Torrence's schedule during that time.

Plaintiff also argues that Torrence worked a part-time schedule in 2018 based on her and Williams' review of a "Fairburn calendar." (Dkt. 50-3, ¶ 10; Dkt. 50-4, ¶ 6). Neither, however, attached the alleged "Fairburn calendar" to their declaration and it is not otherwise contained in the record. Additionally, neither provided any details about this "Fairburn calendar" including who created it or how it was created. In short, the "Fairburn calendar" cannot be authenticated by Plaintiff or Williams and cannot be relied on to establish personal knowledge. *See McGowan v. AME Financial Corp.,* 2009 WL 10666307, at *15 (N.D. Ga. Dec. 18, 2009) (finding

---

[3] The testimony upon which Plaintiff relies is misleading as Torrence testified he "[didn't] believe [it was] accurate" that he was "out of the office somewhere between 85 and 87 days between May and December of 2018[.]" (Dkt. 47-2, 57:22-58:12).

paragraphs of affidavit relying on document not attached to the affidavit to constitute hearsay). As such, these statements cannot be considered on summary judgment.

### C. Plaintiff Could Not Perform the Essential Function of Working in the Office and Her Request for Remote Work Was Unreasonable.

Plaintiff's failure to accommodate claim also fails for the separate and independent reason that she needed to *permanently* work from home. In her Response, Plaintiff completely misrepresents the remote work accommodation she was seeking – claiming she only requested to work from home when she was scheduled to work alone. (Dkt. 50, p. 14). It is undisputed, however, that *in addition to* requesting remote work when she was scheduled to work alone, Plaintiff needed to "work[] from home 2 days/week (10 hour days)." (Dkt. 50-1, ¶ 61). Thus, Plaintiff requested an accommodation to permanently work two days from home and potentially a third day if she was scheduled to work alone. Plaintiff utterly fails to address her request to work from home two days per week. Because working in the office was an essential function of the APM position, and it was not reasonable for Plaintiff to permanently work from home, her accommodation claim fails.

#### 1. *Plaintiff Was Not a Qualified Individual Because She Could Not Perform the Essential Function of Working in the Office.*

It is undisputed that working in the office was an essential function of Plaintiff's third-shift APM position. As Torrence explained, Schneider believed that

several of Plaintiff's essential job duties needed to be performed in the office –
especially when Plaintiff was the only APM scheduled for a shift. (Dkt. 46-3, ¶¶ 9-
11).  Indeed, Plaintiff herself admitted that there were certain tasks she could not
perform from home and she needed to be in the office to interact with drivers. (Dkt.
46-4, 60:6-62:4; 63:7-11).[4] Because Plaintiff needed to permanently work from
home, she could not perform the essential functions of the APM position. *See
Carlson v. Liberty Mut. Ins. Co.,* 237 F. App'x 446, 448-449 (11th Cir. 2007).

### 2. *Plaintiff's Arguments that Working in the Office Was Not Essential and That Remote Work Was Reasonable are Baseless.*

Plaintiff claims that the entire staff was permitted to work from home so
working in the office was not an essential function and it was reasonable for Plaintiff
to work remotely. (Dkt. 50, p. 8). Plaintiff misstates the record testimony. While
APMs were permitted to work from home on one-off occasions (e.g., due to a short
illness or child care issues), it is undisputed that APMs did not regularly work
remotely, and certainly not on a permanent or regular basis, e.g. two days per week,
or anytime an APM was scheduled to work alone.  (Dkt. 46-5, 32:8-20; Dkt. 46-6,
55:16-21; Dkt. 47-1, 208:18-209:25).

---

[4] Incredibly, Plaintiff disputes that certain tasks required her physical presence in the
office. However, during her deposition, when asked: "you understood that for certain
tasks you needed to be in the office to do what you had to do to get things done,"
Plaintiff responded "Correct". (Dkt. 46-4 63:7-11; Dkt. 50-1, ¶ 16).

Plaintiff also argues that it was not essential to work in the office and that working from home was reasonable because Kitchens (an APM on the first shift) was permitted to work remotely. Kitchens, however, worked remotely for four months to care for her mother. Plaintiff, on the other hand, requested a *permanent* accommodation of working from home. (Dkt. 46-4, Ex. 19).

Plaintiff also argues that the transfer of the APM position to Green Bay a year after her termination establishes that working in the office was not an essential function of the third-shift APM position and remote work was reasonable. Plaintiff, however, ignores that Schneider reallocated certain essential functions of the APM position to the Service Operation Support ("SOS") position based in Fairburn. For example, Schneider reallocated the essential job function of interacting face-to-face with drivers from the APM position to the SOS position. (Dkt. 47-6, 26:6-18). Consequently, Plaintiff's assertion that Schneider transferred the essential functions of the APM position to Green Bay is misleading and not supported by the record. [5]

Plaintiff also argues that remote work was reasonable because Schneider permitted employees to work remotely during the COVID-19 pandemic.  (Dkt. 50, p. 9). Plaintiff's argument is baseless. To protect the health and safety of its

---

[5] Plaintiff also points to the FWA to dispute that working in the office was an essential function. As discussed *supra*, the existence of the FWA does not mean that working in the office was not an essential function of the APM position.

employees, Schneider permitted much of its workforce in Fairburn to temporarily work from home. As Plaintiff acknowledges, Schneider has since returned Fairburn employees to the office. (Dkt. 50-2, ¶ 83). Moreover, even the EEOC has stated that "[t]he fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework…does not mean that the employer permanently changed a job's essential functions [or] that telework is always a feasible accommodation…"[6]

Because Plaintiff's request to permanently work from home two days per week and anytime she worked alone was unreasonable, her claim fails.[7]

### D. Plaintiff Caused the Breakdown of the Interactive Process.

It is undisputed that Plaintiff failed to timely engage in the interactive process. (Dkt. 50-1, ¶ 69). Plaintiff admits that Schneider sent Plaintiff and Dr. Wanzo a letter on April 2, 2019 requesting additional information so that Schneider could assess whether it could provide alternative accommodations to Plaintiff. (Dkt. 50-1, ¶ 62). Schneider requested the information by April 8, 2019, and it is undisputed that

---

[6] EEOC Guidance, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Technical Assistance Questions and Answers (Updated June 28, 2021) (D.15).

[7] Plaintiff's failure to accommodate claim should also be dismissed because it is undisputed that Plaintiff could not perform the essential function of working in a fast-paced, high pressure environment.  (Dkt. 50-1, ¶ 71; *see also* Dkt. 46-1, p. 13-14).

Plaintiff did not provide the information until two weeks after her termination. (Dkt. 50-1, ¶¶ 69, 76). In her Response, Plaintiff attempts to shift the burden to Schneider, claiming that if Schneider had asked Plaintiff to follow up with Dr. Wanzo, Plaintiff would have done so. But the burden to provide medical documentation supporting her need for an accommodation rests solely with Plaintiff – not Schneider. *See Umbarger v. Ga. Dep't of Revenue,* 2007 WL 9700751, at *20-21 (N.D. Ga. Mar. 30, 2007). Because Plaintiff did not timely provide the documentation, she caused a breakdown in the interactive process and her failure to accommodate claim should be dismissed. *See Brown v. McHugh,* 2011 WL 13168836, at *29 (N.D. Ga. Aug. 31, 2011) (granting summary judgment when employee failed to engage in the interactive process where the record contained no evidence that plaintiff provided additional medical documentation to support her accommodation request).[8]

## II.   **Plaintiff's ADA Discriminatory Discharge Claim Should Be Dismissed.**

Plaintiff cannot establish even a *prima facie* case of disability discrimination.

---

[8] Plaintiff incorrectly states that Schneider had an obligation to conduct an undue burden analysis. (Dkt. 50, p. 16). An employer is only required to conduct such an analysis if an employee identifies a "reasonable accommodation." Since Plaintiff has not done so, Schneider was not required to conduct any such analysis. *Scott v. Postmaster Gen. U.S. Postal Serv.*, 818 F. App'x. 914, 917 (11th Cir. 2020) ("[Defendant] was not required to affirmatively assert undue hardship before [plaintiff] proved that there was a reasonable accommodation that [defendant] could give her.").

As detailed *supra*, Plaintiff was not a qualified individual. Moreover, Plaintiff has not set forth any evidence establishing that Schneider unlawfully discriminated against her because of her disability. She does not identify any similarly-situated employee without a disability who was treated more favorably, or any other evidence to support her claim. Plaintiff merely claims that "Schneider terminated [her] because of her disability." (Dkt. 50, p. 19). This conclusory assertion cannot establish causation. *Lockaby v. United Testing Grp., Inc.*, 986 F.Supp. 1400, 1404 (N.D. Ga. 1997) ("employee's…conclusory statements are insufficient to show intent to discriminate[.]"). Plaintiff has failed to meet her burden.

Plaintiff argues that "Schneider makes no effort to articulate a legitimate reason" for terminating Plaintiff's employment. (Dkt. 50, p. 19). Schneider's brief, however, contains an entire section detailing its legitimate reason for terminating Plaintiff, i.e., that Plaintiff could not perform the essential functions of her job. (*See* Dkt. 46-1, p. 24-25). Plaintiff has not contested Schneider's arguments or asserted any facts establishing pretext in her Response. As a result, her discrimination claim must fail. *Chambers v. Florida Dept. of Transp.*, 620 F. App'x. 872, 879 (11th Cir. 2015) (affirming summary judgment finding no evidence sufficient to create a genuine issue of fact on pretext).

### III. <u>**Plaintiff's Retaliation Claim Should be Dismissed**</u>.

In both Plaintiff's retaliation claim and failure to accommodate claim, Plaintiff alleges that Schneider refused to approve her request for an accommodation and instead terminated her employment. Courts in the Eleventh Circuit have routinely dismissed ADA retaliation claims when it constitutes a "repackaging or duplication" of a reasonable accommodation claim. *Brown v. Delta Air Lines*, 2021 WL 2479091, at *18 (N.D. Ga. March 9, 2021) (finding plaintiff's retaliation claim failed because it is a "repackaging or duplication" of her reasonable accommodation claim"). In her Response, Plaintiff did not confront the cases cited by Schneider. Rather, Plaintiff summarily states that Schneider's "assertion is without merit" without citation to any authority. Plaintiff's retaliation claim should be dismissed.

Even assuming that Plaintiff could bring a retaliation claim, Schneider has articulated a legitimate, non-retaliatory reason for terminating Plaintiff – her inability to perform the essential functions of her job.[9] As a result, the burden shifts back to Plaintiff to prove that Schneider's proffered explanation was a pretext for retaliation. Plaintiff, again, fails to advance any pretext argument – nor can she. The fact that Schneider repeatedly granted Plaintiff extensions of her requested

---

[9] Plaintiff again incorrectly states that Schneider has not articulated a legitimate, non-retaliatory reason for its decision, even though Schneider devoted a section of its opening brief to this argument. (*See* Dkt. 46-1, p. 24-25).

accommodations belies any argument that Schneider terminated Plaintiff's employment in retaliation for requesting an accommodation. Since Plaintiff has not put forth any evidence to establish pretext, her retaliation claim must be dismissed.

## IV.   **Plaintiff's Race Discrimination Claims Should be Dismissed.**

Plaintiff cannot establish a *prima facie* case of race discrimination because she has failed to identify any similarly situated employee who was treated more favorably, i.e., permitted to work a part-time schedule for six months and permanently work from home two-days per week. While Plaintiff argues that Kitchens was similarly situated to Plaintiff, Kitchens is not a proper comparator. It is undisputed that Kitchens worked a different shift, reported to a different supervisor, never worked part-time, and never permanently worked from home two days per week. (*See* Dkt. 46-1, p. 19-22). As a result, Plaintiff's race claims fail.

Even if Plaintiff could establish a *prima facie* case, Plaintiff has not established pretext. Plaintiff merely advances her belief that she could perform the essential functions of the APM position, but this assertion is not sufficient to establish pretext. "[T]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs." *Ostrow v. GlobeCast America Inc.*, 489 F. App'x. 433, 436 (11th Cir. Sept. 17, 2012). In short, Plaintiff has not advanced any evidence demonstrating that her race factored into Schneider's termination decision.

## **Conclusion**

For these reasons and the reasons set forth in Defendant's Memorandum in Support of its Motion for Summary Judgment, the Court should grant Defendant's Motion for Summary Judgment and dismiss all of Plaintiff's claims with prejudice.

Date: August 2, 2021

Respectfully submitted,

By:___/s/ Peter A. Milianti_____
Peter A. Milianti (admitted *pro hac vice*)
Melissa M. Weiss (admitted *pro hac vice*)
McGuireWoods LLP
77 West Wacker Drive, 41st Floor
Chicago, IL 60601
T: 312-849-8100
F: 312-849-3690
pmilianti@mcguirewoods.com
mweiss@mcguirewoods.com

M. Laughlin Allen, Esq.
Georgia Bar No. 901999
McGuireWoods LLP
1230 Peachtree Street, N.E
Suite 2100, Promenade
Atlanta, GA 30309-3534
T: (404) 443-5738
F: (404) 443-5773
mlallen@mcguirewoods.com

*Counsel for the Defendant*

## CERTIFICATE OF SERVICE AND
## COMPLIANCE WITH LOCAL RULE 5.1B

I certify that on August 2, 2021, I electronically filed the foregoing *Reply in Support of Defendant's Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Cheryl B. Legare
cblegare@law-llc.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Respectfully submitted,


By:   /s/ Peter A. Milianti
Peter A. Milianti (admitted *pro hac vice*)
Melissa M. Weiss (admitted *pro hac vice*)
McGuireWoods LLP
77 West Wacker Drive, 41st Floor
Chicago, IL 60601
T: 312-849-8100
F: 312-849-3690
pmilianti@mcguirewoods.com
mweiss@mcguirewoods.com

M. Laughlin Allen, Esq.
Georgia Bar No. 901999
McGuireWoods LLP
1230 Peachtree Street, N.E
Suite 2100, Promenade

17

Atlanta, GA 30309-3534
T: (404) 443-5738
F: (404) 443-5773
mlallen@mcguirewoods.com

*Counsel for the Defendant*